UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re

    Focus Capital, Inc.,                        Chapter 11
            Debtor                         Case No. 12-13683

                                              Hearing Date: January 9, 2013
                                              Hearing Time: 10:00 a.m.

## OBJECTION TO MOTION FOR RELIEF FROM STAY BY FRANCES STACCIA ET AL.

      NOW COMES Focus Capital, Inc. (the "Debtor"), by its attorneys, The Tamposi Law Group, P.C., and respectfully objects to the Emergency Motion Pursuant to Section 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, For an Order Modifying the Automatic Stay to Allow Payment of a Judgment Under the Errors and Omissions Insurance Policy Issued to the Debtor and to Proceed with the Declaratory Judgment Litigation Against the E&O Insurance Carrier to Obtain Aggregate Insurance Coverage by Frances Straccia et al., (the "Stay Motion") and in support hereof states as follows:

      1.      The Stay Motion seeks a lifting of the automatic stay to allow certain creditors of the Debtor (the "Movants" herein) to obtain insurance proceeds under the Debtors Errors and Omissions insurance provided by Twin City Fire Insurance Co. (the "E & O Policy").

      2.      This case, however, represents a classic race to the courthouse where several creditors find themselves arguing over an E & O Policy that is not large enough to compensate all of their losses. Such contests as these must necessarily end at the Bankruptcy Court, which can marshal the insurance proceeds, along with other assets, and arrange for their distribution so as to maximize their ability to satisfy legitimate creditors' claims.

1

3. The Movants were indeed the first parties to raise a claim against the Debtor through an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA") where they obtained an award. It should be noted that there was no finding of fraud in the FINRA action and no damage multiplier applied to any of the claims. Although the award is unclear, it would appear that the arbitration panel simply found that the creditors suffered investment losses while with the Debtor and therefore should have been compensated.

4. Once the Movants sought to enforce their claims in the Hillsborough Court Superior Court, the New Hampshire Secretary of State joined the race. On or about November 28, 2012 William Gardner, New Hampshire Secretary of State (the "Secretary") filed a Petition for Injunctive Relief, TRO, Asset Freeze, and Appointment of a Receiver (the "State Petition"). A copy of the State Petition is attached hereto as Exhibit A. In the State Petition the Secretary identified 11 confidential claimants with claims in the millions of dollars and sought the appointment of a receiver to distribute the Debtor's assets to ensure a equality of distribution. The Secretary also stated that it continued to receive complaints and planned to implement some form of claims process in the Superior Court to deal with such claimants. Rather than watching the various competing claimants attempt to cobble together an awkward state court chapter 11 liquidation, the Debtor elected to seek relief from this Court.

5. The purpose of this case is to pay all creditors on a *pro rata* basis from the assets of the estate, which plainly include the proceeds from the E & O policy.

**The Policy**

6. The E & O Policy at issue is a typical liability policy covering losses to third parties occasioned by the acts of the Debtor. The granting language of the E & O Policy provides that "The Insurer shall pay loss on behalf of the (Debtor) resulting from a claim first made against the (Debtor) during the policy period." See para. i(A) of the E & O Policy, a copy of which is attached hereto as

2

Exhibit B.  Owing to a tail policy purchased by the Debtor, the deadline to make claims under the policy is April 30, 2013.  Thus the Debtor will be able to make such claims on behalf of all general unsecured creditors, whose proof of claim deadline is 4/3/13.

**The Law**

1. Bankruptcy Code Section 541(a)(1) provides that the "estate is comprised of all of the following property, wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case."

2. The language of *§ 541(a)(1)* is broad enough to cover an interest in liability insurance, namely, the Debtor's right to have the insurance company pay money to satisfy one kind of debt -- debts accrued through, for example, the insured's negligent behavior.  Tringali v. Hathaway Machinery Company, Inc., 796 F.2d 553, 560 (1st Cir. 1986).  In fact, the First Circuit noted in Tringali that every court that has recently considered the specific question has held that liability insurance falls within the scope of § 541(a)(1).  Id., citing, A.H. Robins Co. v. Piccinin, 788 F.2d 1009 (4th Cir. 1986); In re Davis, 730 F.2d 176, 184 (5th Cir. 1984); In re Forty-Eight Insulators, Inc., 54 Bankr. 905, 907-09 (Bankr. N.D. Ill. 1985); In re J & L Transport, Inc., 47 Bankr. 51, 52 (Bankr. W.D. Wisc. 1985); but see, In re Fay Stocking Co., 95 F.2d 961, 962-63 (6th Cir. 1938)(distinguishable because policy in question and state law gave creditor direct claim against insurer not assured).

3. The Tringali Court also noted that this judicial unanimity is not surprising because any contrary holding could:

> "start a race to the courthouse whenever a policy is too small to satisfy several potential plaintiffs. Such a race could mean unfair results as between potential plaintiffs; it could also prevent a bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate."

3

Tringali v. Hathaway Machinery Company, Inc., 796 F.2d at 560.   Such a race to the courthouse is exactly the situation in the case now before the Court.   The Movants are leading the race, having liquidated their claims, but not yet having obtained judgment; the Secretary and his claimaints are not far behind, having sought prejudgment relief in the state courts, which claims are now stayed.   There also exist a whole class of creditors who have yet to file claims, but which may have legitimate claims against the same policy.   To allow the Movants to obtain some sort of priority when their claims are essentially identical to the Secretary's claims and to the yet to be filed claimants not only flies in the face of overwhelming legal authority cited above, but is contrary to the underlying policy of equitable distribution permeating the United States Bankruptcy Code.

4. The Movants also cite a number of cases for the proposition that Directors and Officers Policies ("D&O Policies") are not property of the state.   These cases, however, clearly show the distinction between and E & O policy, which covers liability of the corporation, and a D&O policy which covers liability of the directors and officers of the corporation.   See e.g.  In re Adelphia Communications Corp., 298 B.R. 49, 53 (S.D.N.Y. 2003)(noting the spit of authority as to whether proceeds from a D&O Policy is property of the bankruptcy estate); In re Allied Digital Techs., Corp., 306 B.R. 505, 510 (Bankr. D. Del. 2004)( D&O Policy proceeds not asset of the estate where coverage no longer existed, all claims were adjudicated and /or barred by statute of limitations); In re: First Cent. Fin. Corp., 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)(Unlike an ordinary liability insurance policy in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D&O policy).

5. The policy in question here plainly indemnifies claims against the Debtor and thus is distinguishable from a policy designated for the benefit of non-debtor officers and directors.  Therefore, the E& O Policy and its proceeds belong to the estate for distribution to its creditors.

6. Lastly, the Movants claim, without citing any authority that any claims made after their

4

FINRA award are somehow "effectively subordinated to the properly noticed and now adjudicated Final Award."  <u>See</u> Stay Motion at 2d para. 16.  This argument may have some merit if the policy reporting period was closed, but it is not.  Likewise, if the Movants had obtained a judicial lien on either the proceeds of the E&O Policy or other property of the estate, it is conceivable that they could claim some sort of priority, but the estate has no assets other than the E&O Policy and no such lien exists.  Therefore, it would appear that their claims should be allowed or disallowed under the constraints of 11 U.S.C. section 502 as with all other claimants, without any sort of priority.

WHEREFORE, the Debtor respectfully requests that this Court deny the Stay Motion.

Respectfully Submitted,
Focus Capital, Inc.

December 20, 2012  /s/ Peter N. Tamposi
Peter N. Tamposi (BNH #04913)
The Tamposi Law Group, P.C.
159 Main St.
Nashua, NH 03060

**CERTIFICATE OF SERVICE**

I, Peter N. Tamposi, do hereby certify that a copy of the foregoing objection to Emergency Motion Pursuant to Section 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, For an Order Modifying the Automatic Stay to Allow Payment of a Judgment Under the Errors and Omissions Insurance Policy Issued to the Debtor and to Proceed with the Declaratory Judgment Litigation Against the E&O Insurance Carrier to Obtain Aggregate Insurance Coverage by Frances Straccia et al. was this day was served by ECF upon the parties of record by the Court's ECF system.

Dated: December 20, 2012  /s/ Peter N. Tamposi
Peter N. Tamposi (BNH #04913)